UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GS LABS, LLC,

            Plaintiff,

    v.

AETNA, INC., et al.,

            Defendants.

Case No.  25-cv-08525-RFL

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART**

Re: Dkt. No. 25

During the COVID-19 pandemic, Congress passed the FFCRA and the CARES Act, which collectively obligated "health insurers to cover, at no additional expense to insureds, diagnostic products for detection of COVID-19" and "reimburse the provider of the diagnostic testing at either a negotiated rate or in an amount that equals the cash price for such service as listed by the provider on a public internet website." *See Saloojas, Inc. v. Aetna Health of Cal., Inc.*, 80 F.4th 1011, 1013 (9th Cir. 2023) (citations and quotation marks omitted).  GS provided such COVID-19 diagnostic testing during the pandemic to those insured by Aetna.  Allegedly, however, Aetna underpaid or refused to pay many of GS's submitted claims.  GS accordingly commenced this action to recover against six Aetna entities and six employers (termed "ASO Plans" by GS) who provided health insurance to their employees through plans administered by Aetna.  (*See* Dkt. No. 1 (the "Complaint").)  Aetna now moves to dismiss.  (*See* Dkt. No. 25 (the "Motion").)  For the reasons set forth below, the Motion is **GRANTED**.  This Order assumes that the reader is familiar with the facts of the case, the applicable legal standards, and the parties' arguments.[1]

---

[1] All citations to page numbers in filings on the docket refer to ECF page numbers.

1

I.    **RICO**

A.    **Section 1962(a)**

The Section 1962(a) claim is dismissed because GS "does not contest dismissal" of that claim "without prejudice."  (*See* Dkt. No. 38 at 24.)

B.    **Section 1962(c)**

"The elements of a [Section 1962(c)] civil RICO claim are as follows:  (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property."  *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (citation and quotation marks omitted).  GS's allegations do not satisfy the predicate acts or enterprise requirements.

1.    **Predicate Acts**

GS alleges that Aetna engaged in two categories of predicate acts:  (1) mail and wire fraud (18 U.S.C. §§ 1341, 1343); and (2) embezzlement and conversion (18 U.S.C. § 664).

a.    **Mail and Wire Fraud**

"Wire or mail fraud consists of the following elements:  (1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud."  *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010) (citation omitted).  GS does not sufficiently allege that Aetna formed any fraudulent scheme.  GS characterizes the offending conduct as Aetna's "use[] [of] the mails and wires to . . . transmit[] material misrepresentations and omissions about [Aetna's] obligations under the FFCRA and the CARES Act to cover and reimburse GSL and other similarly situated [out of network] providers of Covid Testing services, while simultaneously profiting from its intentional violations of these laws."  (*See* Complaint ¶ 66.)  Specifically, it points to two FAQs that Aetna disseminated "across many mediums (e.g. websites, FAQs, articles, bulletin board materials, guidance documents, etc.)."  (*See id.* ¶ 73.)  In the first FAQ, Aetna confirmed that it would "cover the cost of COVID-19 testing for members," that it would "waiv[e] member cost-sharing for diagnostic testing related to COVID-19," and

2

that this waiver policy "align[ed] with the [FFCRA] and CARES legislation." (*See id.* ¶ 74.) In the second FAQ, Aetna similarly confirmed the applicability of the cost-sharing waiver to diagnostic testing performed by out of network providers and that its waiver policy "align[ed]" with the requirements of the FFCRA and the CARES Act regarding cost-sharing. (*See id.* ¶ 75.) All of Defendants' alleged RICO schemes ultimately derive from Aetna's alleged failure to comply with the FFCRA and the CARES Act in purported violation of these representations. (*See id.* ¶¶ 66, 71-147.)

The cited representations in the FAQs are not sufficiently alleged to be false. GS does not allege that Aetna did not cover the cost of COVID-19 testing for members. GS does not allege that Aetna did not waive cost-sharing, including for testing performed by out of network providers. And GS does not allege that Aetna failed to comply with FFCRA and Cares Act requirements in covering the cost of COVID-19 testing for members or waiving cost-sharing. Ultimately, GS's contention is that Aetna refused to pay GS 100% of what it billed or its posted cash price for COVID-19 testing as required by the FFCRA and the CARES Act. But nowhere in the Complaint does GS identify any representation by Aetna that it would pay GS 100% of its billings or its posted cash price. Although GS suggests that the FAQs should be read as representations that Aetna was complying with FFCRA and CARES Act requirements to pay GS its posted cash price, nothing in the FAQs addresses those specific provisions of the statutes. *Cf. Aetna Life Ins. Co. v. Fast Lab Techs., LLC*, No. 24-cv-02057-PKC, 2025 WL 2463706, at *9-10 (S.D.N.Y. Aug. 27, 2025) (in evaluating promissory estoppel claim, concluding that similar FAQs do not constitute "any promise by Aetna to reimburse [a healthcare provider] for all of its COVID-19 testing services" and instead represent "general responses to frequently asked questions that detail Aetna's compliance with the coverage requirements of the FFCRA and the CARES Act"). GS also fails to allege facts to support a plausible inference that Aetna had the required scienter regarding its compliance with the FFCRA and the CARES Act provisions concerning payment of GS's posted cash price.

Moreover, even if the FAQs were misrepresentations or contained misleading omissions,

3

GS does not describe them with sufficient particularity to satisfy the requirements of Federal Rule of Civil Procedure 9(b), as GS does not allege where specifically Aetna published the FAQs or when it did so.  *See Mansfield v. StockX LLC*, 802 F. Supp. 3d 1143, 1150 (N.D. Cal. 2025) (under Rule 9(b), "claims sounding in fraud must allege 'an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations'" (quoting *Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007))).

### b.    Embezzlement and Conversion

GS identifies two categories of Aetna's conduct that it alleges constitute embezzlement or conversion of the ASO Plans' "trust assets."  (*See* Complaint ¶ 148.)  First, when Aetna administered the ASO Plans, and an out of network claim was submitted, it sometimes applied a discount to the amount paid to the healthcare provider.  It then paid itself an "access fee" equal to half of the discount.  This fee was paid "directly from the Aetna ASO Plans' trust assets."  Payment of the fee was required under the terms of the agreements between Aetna and the ASO Plans.  (*See id.* ¶¶ 96-113.)  Second, on certain occasions, Aetna paid claims submitted by GS and subsequently requested partial refunds on the basis that it overpaid, pursuant to the terms of its agreements with the ASO Plans.  (*See id.* ¶¶ 130-47.)

Neither of these categories of conduct constitutes embezzlement or conversion.  Embezzlement "encompasses the fraudulent appropriation of the property of another by one in lawful possession thereof."  *See United States v. Andreen*, 628 F.2d 1236, 1241 (9th Cir. 1980) (citation omitted).  "Conversion encompasses the use of property, placed in one's custody for a limited purpose, in an unauthorized manner or to an unauthorized extent."  *United States v. Eriksen*, 639 F.3d 1138, 1145 (9th Cir. 2011) (citation and quotation marks omitted).  GS does not allege any facts explaining how the ASO Plans' funds were "placed" in Aetna's "lawful possession" or "custody," such that the alleged failure to pay a plan benefit constituted embezzlement or conversion.  Nor does GS allege any facts concerning how the access fees or refund requests, which it concedes were contractually authorized, constituted either fraudulent appropriations or unauthorized payments.

### 2.    Enterprise

"To show the existence of an enterprise . . ., plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citation omitted).  For purposes of its Section 1962(c) claim, GS alleges that each of the ASO Plans, but not Aetna, is an enterprise.  (*See* Complaint ¶¶ 43, 49, 158.)  As an initial matter, if Aetna is not alleged to be part of an enterprise, then the Section 1962(c) claim necessarily fails because Section 1962(c) requires an enterprise to commit predicate acts, and only Aetna is alleged to have committed any predicate acts.  Even if the Complaint is construed broadly to include Aetna within an alleged enterprise, the claim still fails because GS describes only typical business arrangements between Aetna and the ASO Plans, and "[c]ourts have overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises." *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 959 (N.D. Cal. 2019) (citation and quotation marks omitted); *see also Gomez v. Guthy-Renker, LLC*, No. 14-cv-01425-JGB, 2015 WL 4270042, at *8-10 (C.D. Cal. July 13, 2015) (detailing various justifications as to why routine commercial relationships do not constitute enterprises).  GS's reliance on *Skye Orthobiologics, LLC v. CTM Biomedical, LLC*, No. 20-cv-03444-DMG, 2021 WL 6104163 (C.D. Cal. Aug. 30, 2021), is misplaced because, unlike there, this case does not involve allegations "go[ing] beyond ordinary business practices or contractual relationships" between Aetna and the ASO Plans.  *See id.* at *3.

### C.    Section 1962(d)

Because the Sections 1962(a) and (c) claims are dismissed, the derivative Section 1962(d) claims are dismissed as well.  *See, e.g.*, *Banks v. ACS Educ.*, 638 F. App'x 587, 589-90 (9th Cir. 2016).

## II.    STATE LAW CLAIMS

### A.    FAL, Fraud and Negligent Misrepresentation, and Promissory Estoppel

All of these claims are premised on Aetna allegedly misrepresenting to GS that it would

5

pay GS 100% of what it billed Aetna for COVID-19 testing, as required by the FFCRA and the CARES Act, or that Aetna otherwise promised to pay GS 100% of what it billed.  (*See* Complaint ¶¶ 199, 218, 233, 237.)  As discussed above, however, GS does not sufficiently allege that Aetna failed to comply with any of its representations, and even if Aetna did fail to comply, the only representations identified in the Complaint are not stated with sufficient particularity to satisfy Rule 9(b).  Likewise, GS does not identify any promises made by Aetna to GS, and to the extent that GS relies on Aetna's representations as promises, again, GS does not sufficiently allege Aetna's failure to comply.

### B.    UCL

GS brings claims under all three prongs of the UCL.  The unfair prong and fraudulent prong claims are based on Aetna's alleged misrepresentations (*see id.* ¶¶ 210-11), so those claims are dismissed for the same reasons that GS's other state law claims are dismissed. Turning to the unlawful prong claim, GS bases that claim on several alleged statutory violations: (1) RICO; (2) the FAL; (3) the ACA; and (4) the FFCRA and the CARES Act.  GS does not state RICO or FAL claims.  Those alleged violations, therefore, cannot form the basis of an unlawful prong claim.  As for the ACA claim, Defendants argue that GS does not sufficiently allege any violation of the statute, and GS does not respond to this argument in its briefing.  (*See* Motion at 31; Dkt. No. 38 at 29-30.)  The argument is thus accepted as unopposed, which means the alleged ACA violation cannot form the basis of an unlawful prong claim.

That leaves an unlawful prong claim based on alleged violations of the FFCRA and the CARES Act.  This claim is preempted by ERISA.  "There are two strands of ERISA preemption: (1) 'express' preemption under ERISA § 514(a), 29 U.S.C. § 1144(a); and (2) preemption due to a 'conflict' with ERISA's exclusive remedial scheme set forth in 29 U.S.C. § 1132(a), notwithstanding the lack of express preemption."  *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081 (9th Cir. 2009) (citation omitted).  The unlawful prong claim based on violations of the FFCRA and the CARES Act is expressly preempted.  "ERISA preempts any and all State laws insofar as they may now or hereafter relate to any employee benefit plan that ERISA covers."  *Bristol SL*

*Holdings, Inc. v. Cigna Health & Life Ins. Co.*, 103 F.4th 597, 602 (9th Cir. 2024) (citation and quotation marks omitted).  Two types of claims "relate to" ERISA employee benefit plans: (1) "claims that have a reference to an ERISA plan"; and (2) "claims that have an impermissible connection with an ERISA plan."  *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019) (citations and quotation marks omitted).  The first of these categories, reference to an ERISA plan, controls here.

"A state-law claim has a reference to an ERISA plan if it is premised on the existence of an ERISA plan or if the existence of the plan is essential to the claim's survival."  *Bristol*, 103 F.4th at 602 (citation and quotation marks omitted).  Though the Complaint is not a model of clarity, GS appears to allege that the at-issue billings were all issued in connection with ERISA plans, as GS contends that Defendants failed to follow ERISA's applicable requirements in adjudicating pertinent administrative appeals.  (*See* Complaint ¶¶ 119-20, 123, 125, 127, 134.)  GS does not contest that point, which Defendants raised in the Motion.  (*See* Motion at 27-28; Dkt. No. 38 at 25-26.)  Accordingly, GS's claims are necessarily premised on the existence of those ERISA plans because the FFCRA and the CARES Act "effectively modified the terms of ERISA plans to provide [COVID-19] tests at no cost to a patient" and to require reimbursement to those providing the tests.  *See Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*, No. 20-cv-01675-JBA, 2022 WL 743088, at *8 (D. Conn. Mar. 11, 2022), *modified*, 2022 WL 10560321 (D. Conn. Oct. 18, 2022); *accord Fast Lab*, 2025 WL 2463706, at *13; *see also* FFCRA § 6001(a) ("A group health plan and a health insurance issuer offering group or individual health insurance coverage . . . shall provide coverage . . . ."); CARES Act § 3202(a) ("A group health plan or a health insurance issuer providing coverage of items and services described in section 6001(a) of division F of the [FFCRA] with respect to an enrollee shall reimburse the provider of the diagnostic testing . . . .").  Thus, GS's claim under the UCL's unlawful prong for alleged violations of these statutes is an "attempt[] to secure plan-covered payments . . . through the alternative means of state [] law."  *Bristol*, 103 F.4th at 603.  That is precisely the type of claim that ERISA expressly preempts.  *See Crull v. GEM Ins. Co.*, 58 F.3d

7

1386, 1390 (9th Cir. 1995) ("[W]e have held that state law claims . . . 'relate to' an 'employee welfare benefit plan' [when] they represent attempts to recover benefits allegedly owed under the plan." (citations omitted)).  Several district courts have reached similar conclusions about state law claims premised on violations of the FFCRA and the CARES Act.  *See, e.g.*, *Fast Lab*, 2025 WL 2463706, at *12-14; *Murphy*, 2022 WL 743088, at *10-11; *Biodiagnostic Labs, Inc. v. Aetna Health Inc. (N.Y.)*, No. 23-cv-09570-BMC, 2024 WL 3106169, at *4-5 (E.D.N.Y. June 23, 2024).

Although this Order need not address whether GS's other state law claims are preempted by ERISA, because those claims are dismissed on other grounds, the Court observes that it is not clear whether those other claims are preempted.  Unlike the unlawful prong UCL claim based on alleged violations of the FFCRA and the CARES Act, not all of those other claims clearly relate to ERISA plans.  The theory underlying most of those claims appears to be not that Aetna is liable to GS for failing to reimburse it under ERISA plans but that Aetna is instead liable to it because of certain alleged misrepresentations and broken promises.  Those misrepresentations and broken promises may constitute bases for its claims that are "non-derivative" of any ERISA plans.  *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of the U.S.*, 497 F.3d 972, 978-80 (9th Cir. 2007); *but see Bristol*, 103 F.4th 605-07 (clarifying scope of Ninth Circuit caselaw regarding "claims 'independent' of an ERISA plan").  The parties offer minimal briefing on the issue, and all of GS's claims are dismissed regardless, so this Order does not rule on the issue one way or the other.

## C.    Personal Jurisdiction

In addition to being dismissed as insufficiently pled or preempted, all of GS's state law claims are dismissed to the extent asserted against five of the six Aetna defendants (Aetna, Inc.; Aetna Health, Inc.; Aetna Health Management, LLC; Aetna Life Insurance Company; and Aetna Health and Life Insurance Company) because the Court lacks personal jurisdiction over them. "The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due

process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (citation omitted). California's long-arm statute applies here because, following dismissal of the RICO claims, the only federal law claims asserted, the Court exercises subject matter jurisdiction based solely on diversity jurisdiction, and in a diversity case, the long-arm statute of the forum state applies. *See Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987). California's long-arm statute permits the "exercise [of] jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States." *See* Cal. Civ. Proc. Code § 410.10. Thus, the Court "need only determine whether personal jurisdiction in this case would meet the requirements of due process." *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (citation omitted).

"[D]ue process requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citations and quotations marks omitted). Beginning with general jurisdiction, the five Aetna entities at issue are not alleged to be either organized under the laws of California or headquartered in California. Accordingly, the Court lacks general jurisdiction over these entities. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023); *Grootonk v. Labrie Env't Grp., LLC*, No. 22-cv-01868-FWS, 2023 WL 5420299, at *3 (C.D. Cal. July 20, 2023) (general jurisdiction for corporate and non-corporate business entities is evaluated under the "same approach").

As for specific jurisdiction, GS offers no individualized allegations about any of the Aetna entities and instead lumps them together. That is insufficient to establish personal jurisdiction because "each party's contacts with the forum [s]tate must be assessed individually." *See In re Boon Glob. Ltd.*, 923 F.3d 643, 651 (9th Cir. 2019) (citation and quotation marks omitted); *see, e.g., Smith v. Compton*, No. 22-cv-08439-MWF, 2023 WL 4291672, at *11 (C.D. Cal. Feb. 15, 2023) ("At the onset, the Court notes that Compton is correct in claiming that

Smith cannot establish personal jurisdiction through group allegations aimed at California because those sorts of shotgun pleadings do not satisfy [a plaintiff's] burden to demonstrate personal jurisdiction with respect to each defendant." (citation and quotation marks omitted)).

GS's arguments do not alter these conclusions. That each of the five at-issue Aetna entities has a registered agent for service of process in California does not confer general jurisdiction (*see King v. Am. Fam. Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011)), and having a registered agent is unrelated to "the underlying controversy" (*Ranza*, 793 F.3d at 1068), so it cannot confer personal jurisdiction either. Likewise, without more, the parent-subsidiary relationship between Aetna, Inc., and the remaining Aetna defendants does not satisfy the requirements of an alter ego theory such that personal jurisdiction may be exercised over the five Aetna entities in question based on their connection to the one California-based Aetna entity. *See id.* at 1070. Aetna does not otherwise explain how its allegations satisfy the alter ego test. *See id.* at 1073 (describing requirements of alter ego theory). Finally, that the Aetna defendants regularly file lawsuits in California also does not establish personal jurisdiction. *See, e.g.*, *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993).

## III.    CONCLUSION

For the foregoing reasons, the Motion is **GRANTED** as follows:

- The Section 1962(a) RICO claim is **DISMISSED WITHOUT LEAVE TO AMEND** and **WITHOUT PREJUDICE**.

- The Section 1962(c) RICO claim is **DISMISSED WITH LEAVE TO AMEND**.

- The Section 1962(d) RICO claim is **DISMISSED WITHOUT LEAVE TO AMEND** to the extent based on Section 1962(a) and **WITH LEAVE TO AMEND** to the extent based on Section 1962(c).

- The state law claims are **DISMISSED WITH LEAVE TO AMEND**. Although this Order concludes that the unlawful prong UCL claim is preempted to the extent based on alleged violations of the FFCRA and the CARES Act, that preemption does not mean amendment would be futile because GS may be able to allege in good faith that some of

its claims are based on non-ERISA plans, and it is not clear that any such claims would be preempted.

If GS wishes to file an amended complaint correcting the deficiencies identified in this Order, it shall do so by **April 23, 2026**.  The amended complaint may not add new claims or parties, or otherwise change the allegations except to correct the identified deficiencies, absent leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: April 2, 2026

RITA F. LIN
United States District Judge